# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**CHERRELL J. C. B.,**

   **Plaintiff,**

**v.**

**ANDREW SAUL,** *Commissioner of Social Security,*[1]

   **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:18-cv-04323-AJB**

## ORDER AND OPINION[2]

Plaintiff Cherrell B. brought this action pursuant to § 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for supplemental security income benefits ("SSI") under

---

[1]    On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. Under the Federal Rules of Civil Procedure, Saul "is automatically substituted as a party." Fed. R. Civ. P. 25(d). The Clerk is hereby **DIRECTED** to amend the case style to reflect the substitution.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entry dated Sept. 14, 2018). Therefore, this Order constitutes a final Order of the Court.

the Social Security Act.[3]  For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on April 23, 2015, alleging disability commencing on January 15, 2015.  [Record (hereinafter "R") 248].  Plaintiff's application was denied initially and on reconsideration.  [R94, 110].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R142-44].  An evidentiary hearing was held on August 9, 2017.  [R35-82].  The ALJ issued a decision on November 28, 2017, denying Plaintiff's application on the ground that

---

[3]    Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for SSI for the disabled.  Title II of the Social Security Act provides for federal disability insurance benefits ("DIB").  42 U.S.C. § 401, *et seq.*  Title XVI claims are not tied to the attainment of a particular period of insurance eligibility. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  The relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI.  However, different statutes and regulations apply to each type of claim.  Many times, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.   The same applies to citations of statutes or regulations found in quoted court decisions.

she had not been under a "disability" at any time through the date of the decision. [R15-34]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on July 20, 2018, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on September 13, 2018, seeking review and reversal of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on February 26, 2019. [Docs. 8-9]. On March 29, 2019, Plaintiff filed a brief in support of her petition for reversal of the Commissioner's decision, [Doc. 10], and on April 24, 2019, the Commissioner filed a response in support of the decision, [Doc. 12].[4] The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

## II.    PLAINTIFF'S CONTENTIONS

As set forth in Plaintiff's brief, the issue to be decided is whether the ALJ erred by assigning "very little weight" to the opinion of Dr. Ramesh Amin, Plaintiff's treating physician. [Doc. 11 at 1].

---

[4]     Plaintiff did not file a reply brief, and neither party requested oral argument. (*See* Dkt.).

## III.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.   20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228

(11th Cir. 1999), *superseded by* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000),[5] *on other grounds as stated in Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360-61 (11th Cir. 2018).  The claimant must prove at step one that he is not undertaking substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of

_____

[5]     Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process.  *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330,   338-39   (S.D.N.Y.   2001);   *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)).  Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations.  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

age, education, and work experience.    20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.    20 C.F.R. §§ 404.1520(a)(4)(iv),  416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(v),  416.920(a)(4)(v).    The  Commissioner  must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the    sequential    evaluation    ceases    and    further    inquiry    ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in*

*Elam v. R.R. Ret. Bd*., 921 F.2d 1210, 1214 (11th Cir. 1991).

## IV.  SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a

preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## V.   **STATEMENT OF FACTS**[6]

### A.   **Background**

Plaintiff was a younger individual (age 22) on the alleged onset date, with less than a high school education, and past relevant work as cleaner and

_____

[6]      In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal. [*See* Docs. 11-12; *see also*

appointment setter.  [R27-28; Doc. 11 at 3].  Plaintiff alleges disability due to bipolar I disorder mixed, generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), and major depressive disorder.  [R21; Doc. 11 at 2].

## B.  Lay Testimony

At the outset of the hearing before the ALJ, the ALJ noted that she received untimely material from Dr. Amin.  [R39].  Plaintiff's counsel explained the material had not been found earlier because it had come from a separate facility that she was unaware of, that is, the Clayton Community Service Board ("CCSB"), but the ALJ found that it could have been discovered with due diligence and so she was disinclined to allow it to come into the record.  [R39-40].  However, the ALJ stated that she would allow Dr. Amin's medical source statement, even though it was not timely.  [R41].

Plaintiff's counsel argued that Plaintiff met Listings 12.04 and 12.15 based upon her diagnosis and symptoms from depression, bipolar disorder, PTSD, and generalized anxiety disorder.  [*Id.*].  The ALJ noted that while there were "very

---

Doc. 10 (Sched. Ord.) at 3 ("The issues before the Court are limited to the issues properly raised in the briefs.")].  Where a party's numbering conflicts with the page numbers assigned by the Court's electronic filing system, the Court's citations will utilize the page numbering assigned by the Court's electronic filing system.

serious things going on" there seemed to "have been a big problem here with non-compliance." [R42].

Plaintiff testified as follows. She was 24 at the time of the hearing, had three children, and completed ninth grade. [R42-44]. She admitted she had worked since her alleged disability onset date. [R45-46]. Plaintiff worked at the Holiday Inn Express making beds for less than a month in 2016 and was later fired. [R46, 49]. Between 2014 and 2016, she was self-employed as a nurse's aide. [R46-47]. She lifted less than 20 pounds in both positions. [R46, 48]. Plaintiff stopped working because she was starting to get frustrated with her boss. [R48]. She worked for a month or two through a temporary agency answering phones, and in that job, she was seated the entire time and did not lift more than ten pounds. [R50-51]. The job ended when Plaintiff got frustrated with the people who called and was fired. [R51-52].

Plaintiff stated that she last drove a few weeks ago and could not work because she got irritated, frustrated, short of breath, and needed to sit down. [R52-53]. She testified that she had anxiety attacks three or four times a week that were caused by stress, being mad, or being moody. [R53]. Plaintiff stated her anxiety attacks usually lasted 30 to 40 minutes and she would need to lay down for a few hours afterwards. [R53-54]. Coping mechanisms, such as deep breathing, did not

work for her. [R54]. She saw a doctor every month or two but had not been complying with her medication regimen because there were so many medications and she had a difficult time keeping up with them. [R56]. Plaintiff stated she had also had issues because her Medicaid was "messed up," which caused her to have to pay for her medications. [R57]. When she did take her medication, it made her very sleepy. [*Id.*]. She stated that being able to sleep better was the only benefit she received from her medications. [R58]. Plaintiff sometimes took more medication than she had been prescribed to help her sleep. [R61]. She saw both a counselor and a psychiatrist. [R64].

Plaintiff stated that her relatives helped take care of the children. [*Id.*]. The father of her youngest child knew that she had been molested as a child and wanted to help her. [R58-59]. She got her children breakfast and washed them. [R59-60]. She was unhappy with her living arrangements and was trying to find a place to live. [R65].

Plaintiff testified that when she got moody or frustrated, she had racing thoughts, heard voices, got angry, and was sometimes destructive. [R65-66]. She also described other times hearing voices and feeling hopeless, but the medications helped her sleep and to not have nightmares, [R66-67]. However, she also testified that she still had nightmares all the time, would lay in bed all day and be mad at

11

everyone. [R67]. She also explained that she sometimes saw things that scared her out of the corners of her eyes, sometimes heard voices telling her to do bad things, and was angry all the time despite her counseling. [R67, 69].

Plaintiff stated that she had been seeing Dr. Amin before getting into an altercation with him, after which she did not want to see him anymore. [*Id.*]. She did not like the way he was talking to her and began yelling and screaming at him. [*Id.*]. Dr. Amin also told Plaintiff that he did not want to see her anymore. [*Id.*]. Plaintiff said that men generally made her angry because of her history of sexual abuse, and when she got angry her heart raced, and she got nervous and frustrated. [R70-71]. Plaintiff stated that she had been in the hospital since 2015 for anxiety, carpal tunnel, depression, and schizophrenia, and had severe migraines every other day. [*Id.*].

## C. Medical Records

On April 14, 2015, Plaintiff presented to Southern Regional Medical Center ("SRMC"), complaining of general weakness due to sexual abuse by her stepfather for years that she never dealt with, and as a result she felt depressed, anxious, and had suicide ideations. [R354]. She was diagnosed with depression and discharged in "good" condition after being prescribed Xanax for anxiety. [R357]. She returned to SRMC on April 17-18, 2015, claiming body pain, that the Xanax was

"not sufficient," that she used to be on Seroquel and Abilify but went off without her doctor's orders, but she denied suicidal or homicidal ideations or intent. [R359]. She was found to have taken more Xanax than prescribed, discharged on a diagnosis of migraine, chronic pain, anxiety, and depression, and referred to an outpatient behavioral mental health therapist. [R362-63].

On May 13, 2015, Aly Ahmed, M.D., performed a psychiatric evaluation of Plaintiff in which Plaintiff stated that her problems stemmed from abuse at home as a child. [R374]. Dr. Ahmed noted that Plaintiff was appropriately dressed, appeared anxious, depressed, and irritable, had a restricted affect, denied any unusual perceptions, and had normal intellect, speech and thought, and behavior. [R375]. Dr. Ahmed further noted that Plaintiff's energy was decreased, her sleep was disturbed, she was distractible and had difficulty concentrating, but was cooperative regarding her treatment. [R376].

On September 1, 2015, Plaintiff was referred for a mental status examination to Valerie McAdams, Psy.D., by the Social Security Administration. [R389]. Plaintiff reported that she was unable to maintain employment because she was depressed due to events that occurred during her childhood. [*Id.*]. Plaintiff reported seeing things that were not there. [*Id.*]. Plaintiff reported that she was raped by her stepfather for nine years as a child and that he was also physically abusive.

[R390].  Plaintiff stated that she moved to Georgia to escape her stepfather and was living independently here.  [*Id.*].  She stated that she felt angry all the time, had flashbacks of her rape, and thought about suicide "all the time," but did not make any plans to follow through because of her children.  [R391].  She reported feeling as though she was being watched or followed.  [*Id.*].  Plaintiff explained that she was capable of most daily activities, including bathing, cooking chores, taking medications, and shopping, but was not good with finances and forgot things.  [R392].

Dr. McAdams diagnosed Plaintiff with PTSD and Major Depressive Disorder, Recurrent, Severe, and noted that she was capable of understanding and remembering simple instructions, would likely have mild to moderate difficulty in social relations with coworkers and supervisors, and mild difficulty interacting with the general public.  [R394].  Dr. McAdams further found that Plaintiff had adequate sustained attention for short periods of time but might find it difficult to be persistent and keep pace over longer periods given her current level of emotional functioning.  [*Id.*].

On September 29, 2015, Thomas McIntyre, Ph.D., reviewed records through September 18, 2015.  He found severe Plaintiff's Affective and Anxiety Disorders, and her hypertension and migraines non-severe.  [R103].  He concluded that she

was not significantly limited in the abilities to remember locations and work-like procedures and understand and remember very short and simple instructions, and moderately limited in the ability to understand and remember detailed instructions. He opined that Plaintiff was not significantly limited in the abilities to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule/maintain regular attendance/be punctual within customary tolerances, to work in coordination with or in proximity to others without being distracted by them, and to make simple work-related decisions; and moderately limited in her abilities to carry out detailed instructions, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R106-07]. He also found her not significantly limited in her abilities to interact appropriately with the general public, ask simple questions or request assistance, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He also found her moderately limited in her

abilities to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others but not significantly limited in her abilities to be aware of normal hazards and take appropriate precautions tr av el in unfamiliar places or use public transportation. [R107]. He concluded that despite these limitations, Plaintiff was capable of "moderately detailed instructions [consistent with] work [history] sustained for 2 hour periods over a regular schedule but with some [concentration, persistence, and pace] variability amenable to simple intermittent supervision for moderate detail and with the need for reduced social expectations, gradually introduced change and support for goal setting." [R107-08].

On November 10, 2015, Plaintiff saw Crystal Nelson, M.D., and told her that she felt about the same. [R425]. Plaintiff stated that she had no energy and stayed in bed for most of the day. [*Id.*]. Dr. Nelson noted that Plaintiff was alert and oriented and that, although she has had some negative thoughts, she was bouncing back. [*Id.*]. Dr. Nelson further noted that Plaintiff was sad, tearful, had low self-worth and a loss of energy, experienced agitation and mood swings, was stressed and experienced panic attacks, and suffered from paranoia, social withdrawal, and auditory and visual hallucinations. [R427]. Dr. Nelson also reported that Plaintiff had generalized worries, poor judgment, fair insight, irritated

mood, and was easily overwhelmed. [*Id.*].

On December 11, 2015, D. Malone, Ph.D., a consultative examiner, found that Plaintiff's individual statements regarding her symptoms were partially credible based on medical and non-medical evidence. [R121]. Dr. Malone found that, while Plaintiff's ability to understand and remember very short and simple instructions was not significantly limited, her ability to understand and remember more detailed instructions was moderately limited. [R122]. Dr. Malone also found that Plaintiff had sustained concentration and persistence limitations but that her ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and to be punctual were not significantly limited. [*Id.*]. Dr. Malone further found that Plaintiff had social interaction limitations and, although her ability to interact with the public was not limited, her ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited. [R122-23]. In conclusion, Dr. Malone opined that Plaintiff was capable of moderately detailed instructions and sustained two-hour periods of work over a regular schedule. [R123]. Nevertheless, Dr. Malone noted that Plaintiff might need reduced social expectations, gradually introduced change, and support for goal setting. [*Id.*].

On December 14, 2015, Dr. Cochran, M.D., reviewed the record and

determined that Plaintiff suffered from non-severe ailments singly and in combination. [R118-19].

On March 18, 2016, Plaintiff saw Dr. Nelson and complained of increased depression and sadness. [R481]. Plaintiff stated that she had been struggling for depression for a long time, she was molested by her stepfather at a young age, was very paranoid, and worried often. [*Id.*]. Plaintiff also indicated that she had quit her job because she was too nervous to work. [*Id.*].

On April 8, 2016, Plaintiff saw Dr. Nelson and stated that she was doing better. [R496]. Dr. Nelson noted that Plaintiff was smiling, her mood had improved significantly, she was relaxed and calmer, had been more compliant with her medications, and her anxiety and depression symptoms had improved. [*Id.*].

On May 5, 2016, Plaintiff indicated to Dr. Nelson that she had been doing "okay" and was better than she thought. [R511]. Dr. Nelson noted that she was smiling, her mood had improved significantly, she had no agitation or aggression, was tolerating a reduction in her medication, and was showing a marked improvement in her anxiety and depression symptoms. [*Id.*].

On June 2, 2016, Plaintiff saw Dr. Nelson and reported that she was not doing well, was depressed and sad, was irritated all the time, and was very moody. [R526]. Plaintiff reported that she tossed and turned all night and woke up angry

every morning. [*Id.*]. Plaintiff further reported that she was working part-time and enjoyed getting out of the house and engaging with others, but it had been difficult over the last few weeks due to low energy and motivation. [*Id.*].

On January 19, 2017, a progress note from the CCSB reflected that Plaintiff reported that things were going better, her anxiety was more under control, she still had trouble sleeping, but that her medications were working well. [R680].

On July 25, 2017, Ramesh Amin, M.D., of the Clayton Mental Health Clinic, filled out a form that required that he circle boxes regarding Plaintiff's ability to perform certain activities. [*See* R634-36]. The options included none, mild, moderate, marked, and extreme. [*Id.*]. Dr. Amin indicated that Plaintiff had a moderate limitation in her ability to ask simple questions or request assistance and to understand, remember, and carry out complex instructions or repetitive tasks. [R634-35]. He further opined that she had a marked limitation in her ability to interact appropriately with the general public, get along with co-workers or peers, maintain attention an concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain a routine without special supervision, complete a workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest

periods, make simple work-related decisions, respond appropriately to supervision, respond appropriately to changes in work setting, respond to customary work pressures, and be aware of normal hazards and take appropriate precautions. [R634-36]. Dr. Amin also estimated that Plaintiff's degree of constriction of interests, deterioration in personal habits, and restriction in daily activities were marked. [R634]. He concluded that the limitations could be expected to last 12 months or longer at the levels indicated. [R636]. Dr. Amin did not provide any comments, although there was a section on the form for him to do so. [*Id.*].

### D. Vocational-Expert Testimony

At the hearing before the ALJ, the Vocational-Expert ("VE") testified that an individual could perform the housekeeper position as it is generally performed and could also work as a laundry worker, cleaner, polisher, and lathe operator based on the following limitations: an individual of the same age, education, and work experience as Plaintiff; performing work at all exertional levels; able to understand and carry out simple and routine instructions in a low-stress job with only occasional changes in work setting and decision-making; unable to perform fast-paced work but could complete goal-oriented work by the end of a work shift; able to have brief and superficial interaction with supervisors and coworkers but no contact with the general public; and could not participate in team-based activities.

[R75-76].  The VE further testified that, if such an individual had to be off-task 15 percent or more of the time or consistently absent two days a month there would be no jobs in the national economy that person could perform.  [*Id.*].  Similarly, there would be no work a person could perform if the person was limited to low-stress jobs, could not sustain attention for two-hour increments, and could not perform work with coworkers or the general public.  [R77, 80].

## VI.  **ALJ'S FINDINGS**

The ALJ made the following findings of fact and conclusions of law:

> 1.  The claimant engaged in substantial gainful activity during the following periods: first quarter of 2017 . . . .
>
> . . .
>
> 2.  However, there has been a continuous 12-month period[] during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> . . .
>
> 3.  The claimant has the following severe impairments:  bipolar I disorder mixed, generalized anxiety disorder, posttraumatic stress disorder (PTSD), and major depressive disorder . . . .
>
> . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . .
>
> . . .

21

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand and carry out simple and routine instructions in a low stress job, which is defined as having only occasional changes in the work setting and only occasional decision making required; she cannot perform fast-paced work, such as assembly line work with strict production quotas, but can perform goal-oriented work that can be completed by the end of the work shift; she can have occasional brief and superficial interaction with supervisors and coworkers but no interaction or contact with the general public; and she cannot participate in team-based activities.

. . .

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity . . . .

. . .

7. The claimant has not been under a disability, as defined in the Social Security Act, since April 23, 2015, the date the application was filed . . . .

[R20-29].

The ALJ explained that, although Plaintiff submitted additional written evidence fewer than five business days before the hearing, which would normally not be admitted, the ALJ exercised her discretion to permit Plaintiff to produce additional mental health records from 2017 from the Clayton Mental Health and Georgia Behavioral Centers. [R18]. The ALJ noted that, although Plaintiff had

engaged in substantial gainful activity in the first quarter of 2017, there was a 12-month period where she did not engage in substantial gainful activity and the findings addressed that period. [R20-21].

The ALJ observed that, in addition to her severe impairments, Plaintiff was diagnosed with non-severe ailments including migraines, hypertension, pyelonephritis, and pneumonia. [R21]. The ALJ found that Plaintiff's alleged chronic pain was not a medically determinable impairment because no laboratory or clinical findings or medical observations validated the symptoms and so the existence of a physical impairment could not be medically determined. [R22].

The ALJ concluded that the severity of Plaintiff's mental impairments, single or in combination, did not meet or medically equal any of the criteria of Listings 12.04, 12.06, and 12.15. [*Id.*]. The ALJ found that Plaintiff had a moderate limitation in understanding, remembering, or applying information, a marked limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing herself. [R22-23]. The ALJ also found that because Plaintiff did not have at least two marked limitations or one extreme limitation, the "paragraph B" criteria were not satisfied. [R23]. The ALJ found that the "paragraph C" criteria also were not met because the medical evidence failed to show that Plaintiff's mental disorder

was "serious and persistent" for purposes of the Social Security regulations. [*Id.*].

In crafting the RFC, the ALJ considered all of Plaintiff's symptoms, the opinion evidence, and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence. [R24]. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. [R25]. The ALJ found that mental health treatment notes did not support Plaintiff's allegations and were often normal, which was inconsistent with her allegations of disabling mental limitations and tended to indicate her impairments were not as disabling as alleged. [*Id.*]. The ALJ noted that Plaintiff's symptoms improved with medication and so the reliability of Plaintiff's allegations were diminished by the underlying medical evidence. [R25-26]. The ALJ further noted that, although Plaintiff alleged very limited daily activities, those allegations were unsubstantiated, and the preponderance of the medical evidence outweighed her allegations. [R26].

As for opinion evidence, the ALJ gave considerable weight to consultative examiner Dr. McAdams' opinion that Plaintiff was capable of understanding and remembering simple instructions, would have mild to moderate difficulty in social

relations with coworkers and supervisors, would have mild problems interacting with the general public, had adequate sustained attention for short periods, and mild to moderate problems managing work related stress, because she had an examining relationship with Plaintiff and specialized in psychology. [*Id.*]. The ALJ noted that Dr. McAdams' opinion was supported by Plaintiff's evaluation, history, and demeanor during the hearing. [*Id.*]. The ALJ further noted that the opinion was consistent with the overall medical record, but that Plaintiff's testimony indicated a more extreme view. [*Id.*].

The ALJ gave some weight to the opinions of state agency physicians McIntyre and Malone, who found that Plaintiff had a mild limitation in activities of daily living, moderate limitations in social functioning and concentration, persistence or pace, and no episodes of decompensation. [*Id.*]. The ALJ noted that the doctors were familiar with the Social Security disability program, were specialists in mental health, and their opinions were supported by the medical evidence they reviewed. [R27]. The ALJ also gave some weight to state agency physicians Green-Muldrow and Cochran, who found that Plaintiff's impairments were not severe because they were supported by the medical evidence, they were experts in their fields, and they were familiar with the Social Security Disability program. [*Id.*].

The ALJ gave Dr. Amin's opinion very little weight. [*Id.*]. Dr. Amin found that Plaintiff had a marked limitation in her ability to interact appropriately with the general public, get along with coworkers or peers, perform daily activities, understand, remember, and carry out simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain a routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without unreasonable rest, make simple work-related decisions, respond appropriately to supervision and changes in work setting, respond to customary work pressures, and be aware of normal hazards and take appropriate precautions. [*Id.*]. The ALJ noted that Dr. Amin had a treating relationship with Plaintiff, however, Dr. Amin's treatment notes were not in the record and Plaintiff's counsel did not provide an exception to the 5-day rule to provide them. [*Id.*].

The ALJ noted Plaintiff's past relevant work as a housekeeper and appointment clerk and found that she could perform her past work as a housekeeper as it was generally performed. [R27-28]. The ALJ also noted the VE's testimony that Plaintiff could also find work as a laundry worker, cleaner/polisher, or lace operator. [R28-29]. The ALJ therefore concluded that Plaintiff had not been under

a disability, as defined in the Social Security Act, since April 23, 2015, the date the application was filed. [R29].

## VII. CLAIMS OF ERROR

Plaintiff argues that the ALJ erred by assigning "very little weight" to the opinion of Dr. Amin and that, although the record did not contain Dr. Amin's treatment notes, his opinion was consistent with the medical record. [Doc. 11 at 9]. Plaintiff notes that Dr. Amin found that she had marked impairments in her ability to interact with the general public and coworkers and that she quit her job because she was too nervous to work and was noted as having social withdrawal paranoia and social anxiety. [*Id.* at 9-10]. Plaintiff points out that Dr. Amin opined that she had a marked impairment in constriction of interest and a deterioration in personal habits, and that she had reported that she did not have any motivation or energy, and that working even part-time was difficult because of her low energy and motivation. [*Id.* at 10]. Plaintiff further shows that Dr. Amin opined that she had a marked degree of impairment in her ability to respond to customary work pressure and to changes in work setting and that her treatment for bipolar disorder indicated that she had generalized worries, poor judgment, fair insight, irritated mood, and was easily overwhelmed. [*Id.*].

Plaintiff contends that Dr. Amin's opinion was entitled to substantial weight,

[*id.* at 10-11], and that if an ALJ ignores or fails to properly refute a treating physician's opinion, it must be accepted as true as a matter of law, [*id.* at 11]. Plaintiff argues that the Social Security Regulations require that an ALJ adopt a treating source's medical opinion if certain criteria are met and must still grant such an opinion deference even if the objective medical findings are thin. [*Id.* at 11-12]. Plaintiff asserts that the ALJ gave considerable weight to the opinion of a consultative examiner even though a treating doctor's opinions are entitled to more weight. [*Id.* at 12-13].

Plaintiff also argues that if the ALJ had questions regarding the limitations imposed by Dr. Amin, she had a duty to recontact him. [*Id.* at 13-14]. Plaintiff then contends that the ALJ also failed to scrupulously follow the Social Security Regulations. [*Id.* at 14-15]. She argues that, based on the evidence in the record and her testimony, a finding of disability is supported and requests that the Court reverse the ALJ's decision or, alternatively, remand the case for reconsideration. [*Id.*].

In response, the Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff was not disabled during the relevant period. [Doc. 12 at 10]. The Commissioner argues that an ALJ may discount a treating doctor's opinion when it is conclusory, the doctor fails to provide objective medical

evidence to support his opinion, or the opinion is inconsistent with the record as a whole. [*Id.* at 11]. The Commissioner submits that an ALJ only needs one specific reason to disregard a treating physician's opinion if the record supports it. [*Id.* at 11-12].

The Commissioner argues that the ALJ properly discounted Dr. Amin's opinion, which consisted solely of circled degrees of ability without further explanation. [*Id.* at 12]. The Commissioner contends that Dr. Amin failed to explain his opinion that Plaintiff had marked limitations in some of her mental functioning. [*Id.* at 13]. He also argues that it is unclear what Dr. Amin diagnosed Plaintiff with and, in any event, diagnoses do not establish work-related limitations. [*Id.*]. The Commissioner further notes that the record does not indicate when or how Dr. Amin treated Plaintiff prior to and including 2015. [*Id.*]. The Commissioner argues that Plaintiff has not explained how Dr. Amin's opinion required greater restrictions than the RFC. [*Id.* at 14].

The Commissioner also argues that Dr. Amin's opinion is inconsistent with other evidence in the record, such as Dr. Malone's opinion. [*Id.* at 14]. The Commissioner claims that, although Dr. Malone did not examine Plaintiff or review all the evidence, he was a highly qualified expert and an expert in Social Security. [*Id.*]. The Commissioner contends that Dr. Malone's opinion is consistent with the

record before and after his opinion, and considering the record as a whole, the ALJ's explanation for according little weight to Dr. Amin's opinion is supported by substantial evidence. [R14-15].

The Commissioner disputes Plaintiff's assertion that an ALJ's failure to properly refute a treating physician's opinion means it should be accepted as true, arguing that the case relied upon is not binding authority. [*Id.* at 15-16]. The Commissioner further disputes Plaintiff's assertion that the ALJ failed to develop the record by not re-contacting Dr. Amin, arguing that the ALJ was not required to re-contact Dr. Amin because she did not establish that she informed the Commissioner or the ALJ that Dr. Amin had treatment notes that Plaintiff would not make available for the record. [*Id.* at 16-18]. The Commissioner argues that the Social Security Regulations place primary responsibility for developing the record on the claimant. [*Id.* at 18]. The Commissioner contends that Plaintiff failed to explain why she or her representative failed to provide the information and that the ALJ recognized at the hearing that Plaintiff had failed to inform her about missing records from Dr. Amin within the time allotted by the regulations. [*Id.* at 18-19]. The Commissioner argues that Plaintiff has not demonstrated that her right to due process was violated to the extent warranting a remand. [*Id.* at 19].

The Commissioner next argues that the burden of proving disability rests

with Plaintiff and, here, substantial evidence and proper legal analysis supports the ALJ's decision finding Plaintiff not to be disabled. [*Id.*]. Finally, the Commissioner claims that, should this Court find that the ALJ erred, the appropriate remedy is remand, and not reversal. [*Id.* at 20].

After careful consideration of the parties' arguments, the ALJ's decision, and the evidence of record, the undersigned finds that the ALJ's decision is supported by substantial evidence and was not based upon errors of law. Plaintiff's arguments to the contrary are non-persuasive. *Doughty*, 245 F.3d at 1278 n.2; *Boyd*, 704 F.2d at 1209.

First, the Court concludes at the outset that there is no issue as to whether the ALJ reviewed and weighed Dr. Amin's opinion. [*See* R27]. The ALJ gave the opinion little weight because, although Dr. Amin had a treating relationship with Plaintiff, the treatment notes were not in the record and no explanation was given for their absence. [R18, 27]. The ALJ also considered the medical record, [R24-26], other opinion evidence, including opinion evidence from Dr. McAdams, Drs. McIntyre and Malone, and Drs. Green-Muldrow and Cochran, [R26-27], and the testimony of the VE, [R27-29].

The opinion evidence cited to by Plaintiff consists of a form that required only that Dr. Amin circle boxes as to Plaintiff's ability to perform certain activities.

31

[*See* R634-36]. The form did not include a diagnosis, did not indicate what the basis for the evaluations was, and included no narrative statement by Dr. Amin whatsoever. [*Id.*]; *cf. Serrano v. Comm'r of Soc. Sec.*, No. 6:12-CV-1565-ORL-22, 2014 WL 644722, at *3 (M.D. Fla. Feb. 19, 2014) (citing *Land v. Comm'r of Soc. Sec.*, 494 Fed. Appx. 47, 49 (11th Cir. Oct. 26, 2012)) (stating that checking boxes on a form does not indicate the degree and extent of a limitation and are only an aid before a doctor engages in a required RFC).

Plaintiff points to evidence in the record that she argues supports the more severe restrictions found by Dr. Amin. [Doc. 11 at 9-10; R634-36]. However, a plaintiff pointing to other evidence in the record weighing against an ALJs decision is insufficient to prove that the ALJ's decision is unsupported by substantial evidence. *See*, *e.g.*, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence.") (citation omitted).

Plaintiff argues that Dr. Amin's opinion is entitled to great weight and, where an ALJ ignores or fails to properly refute a treating physician's opinion, it must be accepted as true. [Doc. 11 at 11]. As noted above, the ALJ did not ignore Dr. Amin's opinion. In any event, the Court finds that the caselaw cited by Plaintiff

32

in support of her position to be unsettled. It is true that the Eleventh Circuit has stated that a court must accept a treating physician's opinion as true when the ALJ fails to properly evaluate the opinion. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) ("Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true"). However, in subsequent unpublished decisions of the Eleventh Circuit, the court has ruled that, pursuant to the prior precedent rule, the proper course of action if a doctor's opinion has been ignored is to remand to the ALJ for a determination in the first instance of the proper weigh to be afforded to the opinion. *See Dempsey v. Comm'r of Soc. Sec.*, 454 Fed. Appx. 729, 732 n.5 (11th Cir. Dec. 5, 2011) (per curiam); *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 835 (11th Cir. June 22, 2011) (per curiam). Therefore, even if the ALJ had not properly considered Dr. Amin's opinions, reversal for benefits would not be the appropriate remedy.

Nevertheless, the Court recognizes that substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). " '[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or

33

inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Here, Dr. Amin's opinion, which consisted only of three pages without any reference to underlying evidence or the explanation of the doctor's reasoning, qualifies as conclusory. [R634-36]. Good cause therefore existed for it not to be given substantial weight.[7] In fact, the Court finds that the ALJ properly gave Dr. Amin's opinion little weight, as under the Social Security Regulations, the more a medical source presents relevant evidence and the better explanation a source provides for its opinion, the more weight it is to be given. 20 C.F.R. § 416.927(c)(3).[8]

---

[7] The Court recognizes that the ALJ refused to permit additional evidence from Dr. Amin that may have included relevant medical records. [*See* R18, 38-41]. However, Plaintiff does not argue that the ALJ erred in asserting that the Social Security Regulations generally prohibited the introduction of material within five business days of the hearing, 20 C.F.R. § 404.935(a), and does not challenge the propriety of the regulation itself, [*see generally* Doc. 11]. Plaintiff has also not argued that any exceptions to the general rule apply, *see* 20 C.F.R. § 404.935(b), and, upon review, it does not appear that any exception would be applicable. In any event, because Plaintiff has not raised these arguments, the Court does not reach them. *See, e.g.*, *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001) (holding that issues not briefed are deemed abandoned).

[8] Similarly, Plaintiff argues that, pursuant to SSR 96-2p, a court must adopt a treating source's medical opinion unless certain criteria are satisfied. [Doc. 11 at 11-12]. However, one of the listed exceptions is if the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2p. Because there is no indication that Dr. Amin's opinion was supported by any such evidence, the Court finds the exception applies.

Next, Plaintiff argues that the ALJ erred by giving more weight to the opinions of non-treating medical sources than to Dr. Amin's opinion. [Doc. 11 at 12-13]. Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-CV-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). For the reasons stated above, the Court finds that Dr. Amin's opinion was properly discounted and so there was no error placing greater weight on the opinions of the consulting physicians.

Finally, Plaintiff argues that the ALJ had a duty to seek out additional evidence if she believed it was necessary. [Doc. 11 at 13-14]. It is well-established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(b) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). However, regardless of an ALJ's duty to fully develop the record, "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for

producing evidence to in support of h[er] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11ᵗʰ Cir. 2003); *see also* SSR 17-4p (noting that a claimant has the primary responsibility to submit evidence related to her disability claim). Courts should be guided by whether the record reveals evidentiary gaps which result in unfairness or "clear prejudice." *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11ᵗʰ Cir. 1995) (discussing unrepresented claimants).

Here, the Court notes that it was primarily Plaintiff's obligation to provide the records in question. As explained above, however, the documents were introduced less than five days prior to the hearing and so were properly excluded under the regulations. 20 C.F.R. § 404.935(a). These regulations would have little meaning if ALJs were required to seek out and admit evidence that claimants were tardy in providing. *See also Cordes v. Soc. Sec. Admin., Comm'r*, No. 4:19-CV-00556-ACA, 2020 WL 886288, at *3 (N.D. Ala. Feb. 24, 2020) ("Ms. Cordes makes no specific argument regarding the medical evidence that she submitted but that the ALJ refused to admit to the record. . . . Ms. Cordes does not explain why she believes the ALJ's decision to exclude the evidence runs afoul of 20 C.F.R. § 404.935, and she does not address whether or how any of the § 404.935(b) factors apply."). The ALJ's application of § 404.935 was not erroneous and therefore Plaintiff was not unfairly prejudiced. *Brown*,

36

44 F.3d at 934-35.[9]  Prejudice requires a showing that " 'the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.' " *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 Fed. Appx. 739, 742, 2015 WL 8105166 (11th Cir. Dec. 8, 2015) (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir.1985)).  Since the ALJ considered and evaluated all the evidence in the record properly before her, no error has been shown.

## VIII.  <u>CONCLUSION</u>

In conclusion, for all the above and foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in favor of the Commissioner.

---

[9]      The Court notes that, in *Sims v. Apfel*, the Supreme Court stated that it was an "ALJ's duty is to investigate the facts and develop the arguments both for and against granting benefits . . . ."  530 U.S. 103, 103-04 (2000).  However, the Eleventh Circuit has noted that the issue of an ALJ's duty to fully develop the record was not before the Court in *Sims* and so found that the case did not impose any heightened standard on ALJs beyond an ALJ's long-standing duty to fully develop the record.  *Mosley v. Acting Comm'r of Soc. Sec.*, 633 Fed. Appx. 739, 742 n.1 (11th Cir. Dec. 8, 2015).

**IT IS SO ORDERED and DIRECTED**, this 20th day of March, 2020.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE